STATE OF CONNECTICUT *v.* ANTHONY PAULING
(AC 15824)

Foti, Spear and Cretella, Js.

Argued November 10, 1997—officially released January 20, 1998

*Gerald B. Gore*, special public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Robert Katz*, senior assistant state's attorney, for the appellee (state).

*Opinion*

CRETELLA, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-103 (a), larceny in the second degree in violation of General Statutes §§ 53a-119 and 53a-123 (a) and larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b. The defendant claims that the trial court improperly (1) denied his motions for judgments of acquittal because the evidence was not sufficient to sustain the convictions, (2) admitted into evidence the out-of-court statements of a coconspirator and (3) admitted into evidence an unreliable out-of-court identification of the defendant that involved an impermissibly suggestive procedure. At oral argument before this court, counsel for the defendant acknowledged that the third claim was neither raised during trial nor properly preserved for our review and that the identification procedure thereby becomes part of the

first claim relating to the sufficiency of the evidence to sustain the convictions. We affirm the judgments of the trial court.

From the evidence presented at trial and reasonable inferences drawn therefrom, the jury reasonably could have found the following facts. In the early morning of September 25, 1994, members of the Norwalk police department were directed to investigate a burglar alarm at a motorcycle dealership. As two officers were proceeding to the location, they observed a red Toyota without a front license plate proceed through a stop sign directly in front of their cruiser. The driver of the car immediately increased speed upon noticing the police cruiser. The cruiser's spotlight illuminated the interior of the Toyota, allowing the officers to observe clearly the two occupants. During the ensuing pursuit, the Toyota's lights were turned off and it was driven recklessly through residential neighborhoods, running stop signs and taking evasive action. Eventually, the driver of the Toyota came to an abrupt stop, and both occupants exited the car and attempted to flee through the rear yard of an adjacent residence. As they attempted to scale a fence, they looked directly at the pursuing officers, who again had a clear view of both faces. The officers observed that the driver of the vehicle was wearing very distinctive red pants. The two suspects eluded the pursuing officers, whereupon the officers broadcast a description of the two suspects and were then joined by additional officers and a tracking dog. The trail led the police to an area strewn with mulch and compost.

As the search continued, two other officers spotted the two suspects, one of whom wore red pants, riding bicycles about one mile from the point where the Toyota had stopped. Ignoring orders to stop, the two suspects continued to flee on the bicycles and were eventually apprehended. At police headquarters, both suspects

were positively identified by the two officers who had first commenced the pursuit.

During that same period of time, the police were conducting a burglary investigation at the motorcycle dealership, which revealed that at least two persons had broken the window of the dealership, dismantled a metal security bar that protected the window, removed two motorcycles through the broken window, and dragged them from the scene, leaving drag marks on the ground indicating the route that had been taken. Those marks led to an adjoining truck rental lot that contained evidence of attempts to syphon gasoline from the trucks. From there, the trail led to an adjacent railroad embankment where the police discovered the two abandoned motorcycles.

Additional investigation by the police revealed that that morning two African-Americans in a small, red Japanese car had purchased gasoline that was pumped into a red plastic container matching the description of a container found at the truck rental lot. The attendant at the gas station stated that one of the persons purchasing the gasoline was wearing red pants. Further investigation at the police station revealed that one of the suspects, Alon Scott, had a strong odor of gasoline on his pants. His shoes, as did the shoes of the defendant, contained traces of broken glass, mulch and compost.

Further investigation the following day revealed that during the night a local resident had discovered that her garage had been broken into and that two mountain bicycles had been stolen. The police ascertained that the two bicycles that the defendant and Scott were riding at the time of their apprehension were the bicycles stolen from the garage.

I

The defendant first claims that the evidence presented at trial was insufficient to support his convictions. We are unpersuaded.

We are required to review a claim of insufficient evidence in the light that is most favorable in upholding the verdict. *State* v. *Jones*, 34 Conn. App. 807, 811, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). The test is whether the finder of fact "reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) Id.; see *State* v. *Diaz*, 237 Conn. 518, 541, 679 A.2d 902 (1996). Whether the evidence is wholly or partially circumstantial does not diminish its probative force. *State* v. *Jones*, supra, 811. We have repeatedly held that the inquiry by this court into whether the evidence as shown in the record would support a finding of guilt beyond a reasonable doubt does not require that we believe that the evidence established such guilt, but rather whether any rational trier of fact could have found the essential elements of the crime as having been proven beyond a reasonable doubt. Id.

The evidence presented at trial overwhelmingly supports the jury's guilty verdict as to each charge, including its finding in connection with the conspiracy charge of an agreement to participate in the criminal acts. See *State* v. *Boykin*, 27 Conn. App. 558, 564–67, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992); *State* v. *Rodriguez*, 39 Conn. App. 579, 592–600, 665 A.2d 1357 (1995). While the defendant conceded that he was in the company of Scott during the evening and offered an explanation of his activities, "[t]he jury . . . was not required to accept the defendant's statement as true. [T]he [jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d

336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997)." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 379, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997). The evidence presented, including the face-to-face identification, the flight by the two suspects, one wearing distinguishing red pants, the stolen bicycles, the attempted gasoline purchase, and the incriminating substances on the shoes of the apprehended suspects, overwhelmingly supports each of the jury's findings of guilt.

## II

The defendant claims that the trial court's admission into evidence of the out-of-court statements of Scott constituted reversible error on the grounds that they constituted hearsay statements of a coconspirator and that the trial court failed to undertake a preliminary determination of the admissibility of the statements. We do not agree.

Testimony of Officer Russell Fallo, who was involved in the initial pursuit of the suspects, was introduced over the objection of the defendant. The defendant objected on the ground that the statements were inadmissible hearsay. Following the state's offer of proof outside the presence of the jury, Fallo was allowed to testify as to the nature of a conversation that he had with the coconspirator, Scott.

The prosecution did not offer the challenged statements for their truth, but rather to show that the statement was made and that it was totally inconsistent with the defendant's statements. As such, it was not offered to prove the truth of the matter asserted. " 'Testimony of the contents of a prior oral statement . . . offered only to prove that it was made, is not hearsay.' " *State* v. *Jones*, 44 Conn. App. 476, 485, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997), quoting *State* v. *Miller*, 154 Conn. 622, 629, 228 A.2d 136 (1967).

Furthermore, we agree that if the challenged evidence constituted impermissible hearsay statements of the coconspirator, the overwhelming weight of other independent evidence considered together with all reasonable inferences arising from such evidence would have resulted in the same guilty verdicts. The defendant has fallen far short of his requirement to establish that the admission of the evidence was harmful.

The judgments are affirmed.

In this opinion the other judges concurred.