HAROLYN JOHNSON *v.* JACQUELINE H.
MAZZA ET AL.
(AC 23387)

Lavery, C. J., and Bishop and Hennessy, Js.

Submitted on briefs September 19—officially released November 11, 2003

*Daniel W. Moger, Jr.*, filed a brief for the appellant (plaintiff).

*Opinion*

BISHOP, J. The plaintiff, Harolyn Johnson, appeals from the judgment of the trial court rendered after it granted the defendant's[1] motion to strike the revised amended complaint. On appeal, the plaintiff claims that the court improperly (1) struck the complaint and (2) rendered summary judgment on a complaint that previously had been withdrawn. We affirm the judgment of the trial court in part and reverse it in part.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The plaintiff and the defendant entered into a five year lease for property that the defendant owned in Stamford. As part

---

[1] The plaintiff brought this action against Jacqueline H. Mazza individually and in Mazza's capacity as executrix of the estate of Raymond Mazza. Because Mazza's interests are identical in both capacities, we will refer to her in this opinion as the defendant.

of the lease agreement, the plaintiff paid the defendant $9000 as a security deposit. The plaintiff initiated this action against the defendant by filing a complaint on March 27, 2001. The four count complaint claimed that the defendant had made false representations and violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. It further sought reformation of the lease and an injunction. On April 24, 2001, the defendant filed a request to have the plaintiff revise the complaint. The plaintiff subsequently filed a revised complaint on May 11, 2001, claiming fraud and violation of CUTPA, and seeking reformation of the lease.[2]

On December 18, 2001, the defendant filed a motion for summary judgment, alleging that the plaintiff's claims were barred by the doctrine of collateral estoppel.[3] On December 26, 2001, the plaintiff filed a request to amend the complaint, seeking to add a new count for the return of the security deposit and for double damages pursuant to General Statutes § 47a-21. On December 28, 2001, the plaintiff filed an objection to the defendant's motion for summary judgment, asserting that he was going to withdraw the claims. The court granted the defendant's motion for summary judgment on January 10, 2002. The court granted the request to amend on January 31, 2002. The plaintiff, after the defendant filed a request to revise, filed a

[2] The plaintiff's revised complaint deleted the fourth count, seeking injunctive relief. Prior to the plaintiff's filing the revised complaint, the court sustained the defendant's objection to the plaintiff's application for a temporary injunction.

[3] In May, 2001, the defendant initiated a summary process action against the plaintiff based on two counts: violation of the lease due to the nonpayment of utilities and the nonpayment of rent. On July 19, 2001, the summary process action was tried to the court. Following the trial, the court found in favor of the defendant on the claim on nonpayment of rent and in favor of the plaintiff on the nonpayment of utilities. The court then rendered a summary process judgment of eviction for nonpayment of utilities.

revised, amended complaint based on one count for the return of the security deposit and for double damages.

On February 28, 2002, the defendant filed a motion to strike the plaintiff's revised complaint, claiming that it failed to state a claim on which relief may be granted because it failed to state that the plaintiff had provided a forwarding address for the defendant to return the security deposit. The court thereafter granted the defendant's motion to strike, finding that the plaintiff had not alleged that he had given the defendant written notice of a forwarding address. The defendant subsequently filed a motion for judgment on the ground that the plaintiff had failed to replead after the court struck the plaintiff's complaint. The court granted the motion for judgment. This appeal followed.

I

The plaintiff initially claims that the court improperly granted the defendant's motion to strike the claim for the return of the security deposit and for double damages pursuant to § 47a-21. We disagree with the plaintiff's claim regarding double damages, but agree with the claim regarding the return of the security deposit.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 537–38, 778 A.2d 93 (2001).

A

The crux of the plaintiff's claim is that the court improperly granted the defendant's motion to strike because he was not required to provide the defendant, his landlord, with a forwarding address under § 47a-21 (d) (2) to state a cause of action for the return of the security deposit and for double damages. Accordingly, we are required to interpret § 47a-21 (d) (2) to determine whether a plaintiff is first required to provide a landlord with a forwarding address to afford himself the double damages remedy given to tenants who have not had their security deposits returned within thirty days after terminating the tenancy.

"According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Zanoni* v. *Lynch*, 79 Conn. App. 309, 316, 830 A.2d 304 (2003).

Section 47a-21 (d) (2) provides in relevant part: "Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address. Within thirty days after termination of a tenancy, each landlord other than a rent receiver shall deliver to the tenant or former tenant *at such forwarding address* either (A) the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section after deduction for any damages suffered by

such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the amount or value of any security deposit paid by such tenant . . . ." (Emphasis added.)

In the event that a landlord is not provided with written notice of a tenant's or former tenant's forwarding address, § 47a-21 (d) (4) provides that the landlord is required to return the security deposit to the tenant or former tenant "within the time required by [§ 47a-21 (d) (2)] or within fifteen days after receiving written notice of such tenant's forwarding address, whichever is later." General Statutes § 47a-21 (d) (4). The clear language of § 47a-21 (d) (2) and (4) requires the landlord to return a tenant's security deposit at the forwarding address that the tenant provides.

In addition to the clear language of the statute, the legislative history of the statute supports the court's interpretation that a tenant is first required to provide a forwarding address to a landlord to be afforded the opportunity to receive the double damages remedy under § 47a-21 (d) (2). While the bill, which later became § 47a-21, was in front of the judiciary committee, George Guertin, vice president of the Hartford Property Owners Association, testified about the need for the forwarding address requirement: "Part of this bill should state that a forwarding address should be sent to the owner of the complex. . . . Well, we like the idea of the fine, but we also would like a little cooperation on the part of the tenant . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., pp. 655–56. It is apparent that the legislature agreed with Guertin's testimony because when § 47a-21 was enacted, it included the language that requires a tenant to provide a landlord with a forwarding address.

In this case, the plaintiff's revised, amended complaint admitted that he did not provide the defendant with a forwarding address. Accordingly, he has failed to comply with the terms of § 47a-21 (d) (2).

Furthermore, the plaintiff's reliance on *Kufferman* v. *Fairfield University*, 5 Conn. App. 118, 497 A.2d 77 (1985), is misplaced. The plaintiff claims that *Kufferman* stands for the proposition that a tenant is not required to provide a landlord with a forwarding address when the landlord knows how to contact the tenant. *Kufferman*, however, does not stand for that proposition. The *Kufferman* court addressed whether the trial court improperly awarded a tenant double the security deposit under § 47a-21. The issue of whether a tenant has to provide a forwarding address to a landlord to seek double the security deposit as damages was not at issue in *Kufferman*. Accordingly, in this case, because the plaintiff did not provide the defendant with a forwarding address, as is required by the clear language of § 47a-21, the court properly granted the defendant's motion to strike in regard to the claim for double damages.

B

The plaintiff's revised, amended complaint also sought the return of the security deposit. In its memorandum of decision granting the defendant's motion to strike, the court focused solely on the fact that the plaintiff had failed to provide the defendant with a forwarding address. The court, however, in striking the revised, amended complaint, did not address the plaintiff's claim for the return of the security deposit. Section 47a-21 (g), entitled "Action to reclaim security deposit," provides in relevant part that "[a]ny person may bring an action in replevin or for money damages in any court of competent jurisdiction to reclaim any part of his security deposit which may be due. . . ." Further,

§ 47a-21 (*l*) provides in relevant part that "[n]othing in this section shall be construed as a limitation upon . . . (2) the right of any tenant to bring a civil action permitted by the general statutes or at common law."

Under the terms of a lease agreement, a landlord holds a tenant's security deposit "in trust" for the tenant. "[A] security deposit, whether commercial or residential, is the tenant's property and . . . the landlord holds it for the tenant's benefit subject to the tenant's fulfilling all its obligations under the lease. Indeed, a security deposit by definition is [m]oney deposited by tenant with landlord as security for full and faithful performance by [the] tenant of [the] terms of lease, including damages to premises. *It is refundable unless the tenant has caused damage or injury to the property or has breached the terms of the tenancy or the laws governing the tenancy.*" (Emphasis added; internal quotation marks omitted.) *Beal Bank, S.S.B.* v. *Airport Industrial Ltd. Partnership*, 74 Conn. App. 460, 463, 812 A.2d 866 (2003). Construing the facts alleged in the revised amended complaint in the manner most favorable to sustaining its legal sufficiency, we conclude that the court should have denied the motion to strike the complaint as it relates to the plaintiff's claim for the return of the security deposit because the complaint supported a cause of action.

We recognize that Practice Book § 10-44 permits a party to file a new pleading within fifteen days after a motion to strike has been granted, which the plaintiff failed to do. Although there is no case law requiring a party to replead after a motion to strike has been granted, in this instance, even if the plaintiff were required to file a new pleading after the complaint was stricken, he would not have had to do so in this case. "[T]he law does not require the performance of a futile act." (Internal quotation marks omitted.) *Barber* v.

*Jacobs,* 58 Conn. App. 330, 336, 753 A.2d 430, cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000).

## II

The plaintiff next claims that the court improperly rendered summary judgment on the initial complaint, which alleged false misrepresentation and violation of CUTPA, and sought reformation of the lease. It is the plaintiff's claim that the court should not have rendered summary judgment because he "effectively amended to withdraw those counts." We decline to review the plaintiff's claim.

In response to the defendant's motion for summary judgment, the plaintiff filed an objection, stating that "the counts for which [the defendant] claims summary judgment are being withdrawn." The record before us, however, does not reveal that the plaintiff actually did withdraw those counts before the court rendered summary judgment in favor of the defendant. Furthermore, the plaintiff has failed to provide this court with an adequate record to review his claim. The only reference to the court's granting the defendant's motion for summary judgment is the order sheet signed by the court with the word "GRANTED" circled and a line on the docket sheet reflecting that the motion was granted because the plaintiff failed to appear.

"The duty to provide this court with a record adequate for review rests with the appellant. . . . It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. Practice Book § [60-5] . . . . It is not the function of this court to find facts. . . . Our role is . . . to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiff's claims] would be entirely speculative." (Citations omit-

ted; internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.,* 66 Conn. App. 314, 316, 784 A.2d 426 (2001), rev'd on other grounds, 263 Conn. 178, 819 A.2d 765 (2003). We therefore decline to review the plaintiff's claim.

The judgment is reversed to the extent that the trial court struck the claim for the return of the security deposit and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.