## STATE OF CONNECTICUT *v.* KRISTAN L. PETERS-HAMLIN
## (AC 23979)

Schaller, West and Dupont, Js.

Argued May 28—officially released July 27, 2004

*Kristan L. Peters-Hamlin*, pro se, the appellant (defendant).

*Annemarie L. Braun*, special deputy assistant state's attorney, with whom were *Tiffany M. Lockshier*, assistant state's attorney, and, on the brief, *David I. Cohen*, state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kristan L. Peters-Hamlin, was convicted of illegally passing a standing school bus in violation of General Statutes § 14-279 and passing in a no passing zone in violation of General Statutes § 14-234. She appeals only from her conviction under § 14-279. On appeal, she claims that (1) there was insufficient evidence to find her guilty of illegally passing a standing school bus, (2) the court improperly allowed the state to introduce evidence of her other violation, (3) the trial judge should have disqualified herself from hearing the case and (4) the state failed to disclose evidence in violation of *Brady* v. *Maryland*, 373 U.S.

83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We affirm the judgment of the trial court.

The defendant was initially found guilty by a magistrate. The defendant then exercised her right pursuant to General Statutes § 51-193u to demand a trial de novo. At the trial to the court, the state presented testimony from Peter Stalker, Rotraut Copeland and Officer Andrea Alexander of the New Canaan police department. Stalker testified that he was bringing his children across a street to the school bus when a silver Miata being operated by the defendant passed the school bus. As a result of the defendant's actions, he grabbed his children and retreated from the street. Copeland, the bus driver, testified that she had activated the flashing red signal lights prior to the time the defendant's vehicle passed the bus. Alexander testified about her investigation of the incident and safety mechanisms on school buses.

After the trial, the court found the following facts. The court stated: "I reviewed all exhibits and, first and foremost, that portion of the statute that requires the registration on the bus; I will find [that] to have been proven beyond a reasonable doubt. I refer specifically to state's exhibit one." The court further stated in relevant part: "I find entirely credible the testimony of Peter Stalker. Peter Stalker stated in his direct testimony that the bus was stopped [and] that the silver car [driven by the defendant] pulled out from behind the bus. The stop arm was coming out. The bus was stopped. . . . [Stalker stated that the] bus' red stop sign was partially out when the [silver] Miata was passing the bus. . . .

"I next move to the testimony of Mrs. Copeland, the school bus driver who has been driving a school bus for ten and one-half years. She stated on direct [examination] that . . . at 8:15 [a.m.] she left one stop, she turned on the amber lights. As she got close to 603

which is the address of Mr. Stalker, she cranked the lights so that the red lights would come on. The stop sign was coming out. She was stopped. The door was open. The stop sign was all the way out. When she cranked the door, the red lights automatically come on and flash, and the stop sign comes out. It's all one mechanism. She further stated on direct [examination] that she was 100 percent certain that the red lights were flashing. . . . [She testified that] 250 yards before she stopped, she put the amber lights on. Then she cranked the door open just as she [was] stopping so that the red lights would go on and the stop sign would come out. . . . She stated on redirect [examination]: 'The bus was stopped before [Stalker's children crossed]. He pulled them back. . . .'

"Officer Alexander testified. Officer Alexander has been a police officer with [the] New Canaan [police department] for fifteen years. . . . On redirect [examination], Officer Alexander testified credibly that she has knowledge of school bus lights, that there is one mechanism that is tied into the hand. From her experience . . . she has observed the workings of school buses. . . . She has knowledge as to how they function and . . . has seen how a school bus works. . . . Based on her experience, she testified that the handle that opens the door starts the lights flashing, the red lights flashing . . . and she stated that it takes a couple of seconds for the stop arm to fully extend. She also testified that the stop sign cannot come out without the red lights flashing. She stated that the converse was also true.

"Based on that testimony and the totality of the testimony and the exhibits that have been entered, I'm going to make a finding that the state has proven beyond a reasonable doubt that a violation of . . . § 14-279 did occur. A lot has been made of where the car was in the process of passing the bus. I do not see that anywhere in

the statute. The statute is clear that no one passes when the red lights were flashing." This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence to find her guilty of illegally passing a standing school bus. We are not persuaded.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Moore*, 82 Conn. App. 267, 270, 843 A.2d 652, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004).

General Statutes § 14-279 (a) provides that "[t]he operator of any vehicle, motor vehicle, or authorized emergency vehicle, as defined in subdivision (4) of subsection (a) of section 14-1, shall immediately bring such vehicle to a stop not less than ten feet from the front when approaching and not less than ten feet from the rear when overtaking or following any registered school bus on any highway or private road or in any parking area or on any school property when such bus is displaying flashing red signal lights, except at the specific direction of a traffic officer. Vehicles so stopped for a school bus shall not proceed until such bus no longer displays flashing red signal lights. At the intersection of two or more highways vehicular turns toward a school bus receiving or discharging passengers are prohibited. The operator of a vehicle upon a highway with

separate roadways need not stop upon meeting or passing a school bus which is on a different roadway."

The defendant argues that because no witness directly contradicted her testimony that her vehicle already was passing the bus when the red lights were activated, the court should have found her not guilty. That is not an accurate interpretation of the evidence. Stalker testified that the school bus had stopped and that the defendant then drove from behind the stopped bus and passed the bus. Copeland testified that the red lights and stop sign were deployed when she stopped to pick up Stalker's children. The court found those witnesses to be credible and accepted their testimony, implicitly rejecting the defendant's version of the facts.

The defendant also argues that consistent with her testimony, the court should have found that her vehicle began passing the school bus when the yellow lights were activated. We note, however, that "[i]n evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." (Internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 378, 796 A.2d 1191 (2002). There was sufficient evidence for the court to find the defendant guilty.

II

The defendant claims that the court improperly allowed the state to introduce evidence of her other motor vehicle violation. The defendant argues that evidence of the other violation lacked any probative value and prejudiced the court against her.

Underlying the defendant's claim is the fact that at the hearing before the magistrate, she pleaded guilty to passing in a no passing zone in violation of § 14-234. When she sought the trial de novo, her plea was negated and the charge was reinstated. At the trial de novo, the

state sought to present evidence that the defendant was guilty of violating § 14-234, specifically the testimony of a witness who had observed her vehicle passing in a no passing zone minutes before the defendant's vehicle passed the bus. Prior to the state's presentation, the defendant objected and offered to stipulate to the information the state planned to present. The state argued that the evidence was admissible because the charge was still open and, in any event, it would be admissible under § 4-5 of the Connecticut Code of Evidence as evidence of motive, intent and identity. The court overruled the defendant's objection, and the witness testified that the defendant's vehicle had passed a car in a no passing zone minutes before passing the school bus.

It is hornbook law that the state carries the burden of proof in a prosecution. Count two of the information, charging the defendant with passing in a no passing zone, was open and pending before the court. The defendant's claim fails because the evidence at issue was not admitted as evidence of the defendant's prior bad acts; it was admitted as proof that the defendant committed the charged motor vehicle violation. The evidence was properly admitted.

III

The defendant claims that the trial judge should have disqualified herself from hearing the case. In support, she argues that (1) Judge Reynolds presided over the initial magistrate hearing and also over the trial de novo, and (2) Judge Reynolds questioned the defendant's veracity.

A

The defendant's argument that Judge Reynolds was the magistrate at the magistrate hearing and therefore she should have disqualified herself from the trial de novo is not factually accurate. Trial court records indi-

cate that the magistrate hearing took place before Magistrate Elizabeth Stuckal. The defendant has provided no evidence to the contrary and merely relies on her assertions. The defendant's first argument fails.

B

The defendant also argues that Judge Reynolds should have disqualified herself after questioning the defendant's veracity. The defendant's argument is contradictory; at points in her brief, she argues that the "statements reflect Judge Reynolds' impartiality," but at other points she argues that the judge should have recused herself immediately. We need not unravel that Gordian knot, however, because the defendant has failed to provide an adequate record for us to review.

The defendant bases her argument on the events of February 5, 2003, when her attorney appeared in her stead and argued for a continuance of the trial. During that argument, the defendant asserts, the court questioned the defendant's veracity. In support of that argument, the defendant offers affidavits from herself and her attorney, which were prepared several months after the conclusion of the trial de novo. There is no other record. In *State* v. *Spells*, 76 Conn. App. 67, 82 n.10, 818 A.2d 808, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003), we explained that we do not rely on extrajudicial information that is not subject to the adversarial process. The defendant cannot rely on affidavits that were not admitted into evidence or mentioned at trial. See id. It is the responsibility of the appellant to provide an adequate record for us to review. Practice Book § 61-10. She has failed to do so, and we will not review her argument. See *Johnson* v. *Mazza*, 80 Conn. App. 155, 163–64, 834 A.2d 725 (2003) (court may decline to review claim when record absent because decision would be speculative).

## IV

The defendant's last claim is that the state failed to disclose evidence in violation of *Brady* v. *Maryland,* supra, 373 U.S. 83. The defendant argues that the "government failed to retain and produce the transcript of the in-court testimony of its two key witnesses, Stalker and Copeland, from the magistrate [hearing]."

In *Brady* v. *Maryland,* supra, 373 U.S. 87, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "In order to prove a violation of the state's obligation to disclose exculpatory evidence under *Brady,* the defendant bears a heavy burden to establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material." (Internal quotation marks omitted.) *State* v. *Tomasko,* 242 Conn. 505, 518, 700 A.2d 28 (1997). Part of the defendant's burden under the first prong is to prove that the evidence in question actually exists. See *State* v. *Sitkiewicz,* 64 Conn. App. 108, 114, 779 A.2d 782, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

The defendant's claim fails because the evidence that she claims the state suppressed did not exist. General Statutes § 51-193u (d) provides in relevant part, in regard to magistrate hearings, that "[n]o record of the proceedings shall be required to be kept." Here, there were no records from the magistrate hearing. Further, the defendant was present at the magistrate hearing. She was aware of the evidence presented there. There was no violation of the rule set forth in *Brady.*

The judgment is affirmed.

In this opinion the other judges concurred.